**SCHIFFMAN LAW OFFICE, P.C.**
HELPING THE INJURED AND DISABLED SINCE 1975

Lisa Counters, 016436
4506 N 12th Street
Phoenix, AZ 85014-4246
Voice: (602) 266-2667
Fax: (602) 266-0141
lisa@schiffmanlaw.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Gardner, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Bank of America, Inc., Bank of America Group Benefits Program Plan, and Bank of America Corporation Corporate Benefits Committee, | |
| Defendants. | |

For his complaint against Defendants, Plaintiff alleges:

## **PARTIES**

1.      Gardner is a resident of Maricopa County, Arizona.

2.      Defendant Bank of America, Inc. ("BOA") is a foreign employer authorized to operate, and currently conducting business, in Arizona.

3.      BOA is the plan sponsor and administers the benefit plans and insurance policies at issue in this Complaint through its Corporate Benefits Committee ("CBC").

4.      The CBC is a Plan Administrator, as defined by ERISA, 29 U.S.C. § 1002(16)(A).

**JURISDICTION AND VENUE**

5.     This Court has personal jurisdiction over this matter as BOA and the CBC have committed acts or omissions set forth in this Complaint.

6.     Personal jurisdiction is present because Defendants have has availed themselves of the laws, regulations, and benefits of Arizona.

7.     This Court has subject matter jurisdiction over Defendants under the provisions of ERISA, 29 U.S.C. §§ 1132 and 1133, and because Defendants have caused events to occur in Arizona out of which Gardner's claims arise.

8.     Defendants reside and are found within this District within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

**FACTUAL BACKGROUND**

9.     BOA provided certain employees and associates with long-term disability ("LTD") benefits, pursuant to the Bank of America Group Benefits Program Plan ("The Plan").

10.     BOA and the CBC provided the benefits by purchasing an insurance policy from Aetna Life and Health Ins. Co.

11.     Gardner worked for BOA as a mortgage loan officer. He started working for BOA in September 2007 and worked for BOA continuously until he became disabled on April 20, 2015.

12.     Gardner initially applied for short-term disability ("STD"), which was also provided to BOA employees through a policy provided by Aetna.

13.     Gardner's eligibility for STD began on April 27, 2015, after a seven-day waiting period.

14.     Aetna denied Gardner's claim for STD benefits on May 5, 2015.

15.     Gardner appealed Aetna's denial of STD benefits on October 9, 2015 and Aetna reversed its decision on November 25, 2015, more than a month after he had exhausted his six months of STD benefits.

SCHIFFMAN LAW OFFICE, P.C.
4506 N. 12TH STREET
PHOENIX, AZ 85014-4246
(602) 266-2667

16.     Gardner's LTD benefit eligibility commenced on October 15, 2015. Gardner filed for LTD benefits on or about December 2, 2015.

17.     Aetna approved Gardner for LTD benefits and have been paying him LTD benefits from his initial date of eligibility.

18.     Gardner worked as a licensed mortgage broker. BOA paid him an hourly base pay of $15.30 per hour. Gardner also earned commissions, which constituted more than half of his compensation from BOA.

19.     In 2014 Gardner's earnings exceeded $75,000.

20.     On April 23, 2015, BOA sent Gardner a Confirmation of Coverage that explained how Gardner could continue his various benefit coverages while on leave, by paying the benefit himself. His LTD benefits are identified on this form and reflected Gardner elected "Option 2—60%" and referenced Gardner only to the 2013 Summary Plan Description.

21.     The April 23, 2015 Confirmation of Coverage also indicated that he had Accidental Death & Dismemberment Insurance based on eight times his annual pay and bonus for a total of $479,000. If the $479,000 reflects eight times Gardner's pay and bonus, BOA had calculated his pay and bonus to be approximately $60,000 annually.

22.     The BOA Plan documents effective 2013, described two different methods by which an employee's cost of certain benefits, including LTD, would be calculated for certain commissioned employees.

23.     The SPD identified one method as the "ABBR" – Annual Benefits Base Rate. The 2013 SPD indicates that effective June 30, 2012, Defendants would calculate an ABBR for employees in certain roles because a "base salary may not adequately represent cash compensation for employees in these roles."

24.     Among the roles identified as using an ABBR for calculation was Mortgage Loan Officer.

25.     The SPD also indicated that an employee could confirm their role and whether that employee had an ABBR by contacting the Global HR Service Center.

26.    In late 2013, Gardner required STD benefits. In November 2013, Gardner called the National Benefits center, where he spoke with Camille. Camille, made numerous misrepresentations regarding Gardner's benefits upon which he relied including the fact that an ABBR has nothing to do with an employee's "band," and Gardner's benefits were calculated according to his ABBR.

27.    While he was on STD in 2013, Gardner received STD benefits based on his base salary and his commissions.

28.    The 2014 Summary of Material Modifications to the SPD made no changes to the definition or classification of employees whose benefits were measured by an ABBR.

29.    The 2015 Summary of Material Modifications indicated that BOA added "New ABBR Roles." Mortgage Loan Officer remained listed as well as other roles. The roles contained parentheticals that included an alpha-numeric code, but the significance of the parenthetical codes is not explained in the 2015 SMM.

30.    Once approved for LTD, Gardner began receiving checks that were based on 60% of a monthly salary of $2,652, or $1,591.20.  Gardner, however, had already qualified for Social Security Disability, which lowered his check to the minimum benefit available, i.e., 10% of his monthly benefit.

31.    Gardner attempted to resolve the issue with his LTD pay on numerous occasions with Aetna. Aetna then advised Gardner he had to address the problem with BOA.

32.    Gardner contacted Defendants and Aetna through his counsel on April 12, 2016 and explained the issue.

33.    On April 25, 2016, Defendants responded that the calculation was correct because he was not one of the "Mortgage Loan Officers" who had an ABBR and Gardner did not select buy-up "Option 2" to cover 60% of his salary and 60% of his eligible bonus amount.

34.    The April 2015 Confirmation of Coverage, however, indicated that Gardner had selected "Option 2."

35.    BOA provided the opportunity for Gardner to appeal its decision.

-4-

SCHIFFMAN LAW OFFICE, P.C.
4506 N. 12TH STREET
PHOENIX, AZ 85014-4246
(602) 266-2667

36.     Gardner requested documents from Defendants on April 29, 2016, including "any policy statements or guidelines that explain how a Mortgage Loan Officer is categorized as an ABBR employee." And documents "that establish[] Mr. Gardner is not entitled to a percentage of his base salary plus commissions as STD and LTD benefits."

37.     Defendants refused to provide any documents in this category, indicating in a May 25, 2016 letter that:

> You also request information related to Mr. Gardner's status as an employee with an ABBR and how a mortgage loan officer is classified as one. As was previously communicated to you, Mr. Gardner is currently in a position with Bank of America that is not qualified as an ABBR role. Specifically, Mr. Gardner, at the time of his leave in 2015 was qualified as a Mortgage Loan Officer with a specific job code of 'SR007'. As you will note in the 2015 SMM's provided, for roles as of June 30, 2014, while Mortgage Loan Officers are included on the ABBR list, it is only Mortgage Loan Officers with a job code of SM009, of which Mr. Gardner did not have. There are many factors that Bank of America uses to determine which roles qualify as an ABBR role, and Bank of America does so in its sole discretion. Bank of America does not maintain any official policy or guidelines to determine which roles are ABBR roles and which are note, and makes that determination as needed in its sole discretion as the employer and the Plan sponsor.

> You further requesting documents that establish that Mr. Gardner is not entitled to a percentage of his base salary plus commissions for his STD and LTD benefits. The Plan Documents which you are being provided, most importantly the Summary Plan Description for the Plan, clearly detail the rules under which STD and LTD benefits are paid. Furthermore, the denial letter which was sent to you regarding your client's claim for LTD benefits clearly outlines the LTD rules applicable to your client and what he is eligible for based on his position and his benefit elections (that he did not elect to have his annual bonus included in his LTD benefits)

38.     Gardner did not appeal Defendants' determination because, once Defendants disclosed his "job code" he would not have coverage under the terms of the Plan.

39.     Gardner did not need to exhaust his administrative remedies because his claim against Defendants is a claim for breach of fiduciary duty that does not require exhaustion.

SCHIFFMAN LAW OFFICE, P.C.
4506 N. 12TH STREET
PHOENIX, AZ 85014-4246
(602) 266-2667

SCHIFFMAN LAW OFFICE, P.C.
4506 N. 12TH STREET
PHOENIX, AZ 85014-4246
(602) 266-2667

40.     Even if Gardner was required to appeal Defendants' decision, his demand letter constituted an appeal, not a claim for benefits as referenced by Defendants in the May 25, 2016 letter.

41.     Appealing Defendants' decision was futile, given Defendants' refusal to provide any documents from which to argue an appeal and Defendants' representations that Gardner's job code was not job code that qualified him for 60% of his base salary and commissions.

## COUNT I
## BREACH OF FIDUCIARY DUTY

42.     All previous paragraphs are realleged.

43.     ERISA requires plan fiduciaries to discharge their duties solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan.  29 U.S.C. § 1104(a)(1).

44.     Plan Fiduciaries are required to discharge their duties with the care, skill, prudence, and diligence that a reasonable fiduciary would discharge their duties in a similar situation.

45.     Plan Fiduciaries are also required to act in accordance with the documents and instruments governing the plan, provided the plan documents are consistent with requirements under ERISA.

46.     Defendants breached its fiduciary duties to Gardner by misrepresenting his enrollment status.

47.     Defendants breached their fiduciary duties by failing to properly advise Gardner of his job class/category and that he was not included among the employees who had an ABBR.

48.     Defendants breached their fiduciary duties by providing summary plan descriptions and material modifications that cannot be understood by a beneficiary.

49.     Defendants breached their fiduciary duty by providing him with misleading information regarding his benefit structure.

50.     Defendants breached their fiduciary duties by failing to provide his with proper explanation of benefits.

51.     Defendants breached their fiduciary duties by failing to provide Gardner with an appropriate appeals process.

52.     Defendant breached their fiduciary duties by failing to advise Gardner of his "job code" and by having arbitrary and capricious job code designations.

53.     Defendants actively misinformed Gardner about the nature and basis of his LTD coverage.

WHEREFORE, Gardner prays for entry of judgment against Defendants as follows:

A.     For a finding that Defendants breached their fiduciary duties to Gardner;

B.     For injunctive and equitable relief as appropriate, including surcharge, reformation, hat would place Gardner in the condition he would have been in but for the breach;

C.     For injunctive relief requiring Defendants to actively advise any commissioned employee whether their "job code" qualifies them for an ABBR or PYCC.

D.     For injunctive relief requiring Defendants to provide "relevant documents" that establish an employee's job class and the way job classes are determined;

E.     For a finding that Defendants are equitably estopped from denying Gardner coverage;

F.     For interest on any award received by Gardner at the highest allowable rate;

G.     For an award of Gardner's attorneys' fees and costs incurred herein; and

H.     For such other and further relief as the Court deems just and reasonable.

Dated this 20th day of February 2018.

SCHIFFMAN LAW OFFICE, P.C.


By: _s/MmarLisa J. Counters_
    Lisa J. Counters